UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

ABEL MACHADO MORALES,

                                    Petitioner,

        v.

MARKWAYNE MULLIN, et al.,

                                    Respondents.

Case No. 2:26-cv-737-ART-BNW

ORDER GRANTING HABEAS
PETITION
(ECF No. 9)

Petitioner Abel Machado Morales has been detained in the Nevada Southern Detention Center for just over a year. He concedes that he's subject to mandatory detention, but nevertheless argues that his mandatory detention has become unreasonably prolonged in violation of his due process rights. The Court now grants his petition for habeas corpus and orders a bond hearing.

I.      **Procedural History**

Petitioner Abel Machado Morales was paroled into the United States in 2023. (ECF No. 9-2.) In May 2025, he was convicted of theft-related offenses, for which he received credit for time served and a suspended sentence. (ECF No. 9-6.) He was released directly to ICE detention on May 29, 2025 (ECF No. 9-7), where he has remained since.

Days after he was taken into federal custody, Petitioner's removal proceedings venued in Orlando, Florida, were dismissed. (ECF No. 9-8.) The Government did not re-initiate removal proceedings in Las Vegas until Mr. Machado had spent four months in detention. (ECF No. 9-9.) When he had his individual hearing, an IJ granted him voluntary departure. (ECF No. 9-11.) The Government appealed the IJ's decision in early March 2026. (ECF No. 9-10.) In the three months since, Mr. Machado has been waiting in mandatory detention

1

for the appeal to be resolved. While it is unclear how long the process will take, his counsel represented at the hearing that the deadline to submit appeal briefs had not yet passed.

## II.     Legal Standard

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

## III.    Mr. Machado Is In Mandatory Detention, And It Doesn't Matter What Kind

Although the parties agree that Mr. Machado is subject to mandatory detention, they disagree about which statute controls. Mr. Machado says he's detained under 8 U.S.C. § 1226(c) because he entered the United States without the required documents under § 1182(a)(7), and he has a conviction for misdemeanor theft, putting him within the scope of the Laken Riley Act. While the Government does not deny that he is subject to Section 1226(c), the

Government vigorously argues that he is simultaneously subject to detention under § 1225(b),

It is not necessary to resolve whether either or both statutes control here. Courts apply the same analysis to a habeas petition claiming unconstitutionally prolonged detention under either statute. *Compare De Leon v. Mayorkas*, No. 223CV02073GMNVCF, 2024 WL 343437, at *1 (D. Nev. Jan. 29, 2024) (applying *Mathews* factors to a habeas claim of prolonged detention under Section 1226(c)) *with Ortiz-Castillo v. United States*, No. 223CV01485RFBMDC, 2024 WL 756075, at *1 (D. Nev. Feb. 23, 2024) (applying a similar *Mathews* analysis to a habeas claim of prolonged detention under Section 1225). The Ninth Circuit has "found no basis for distinguishing between non-citizens detained under [§ 1225(b)] and under § 1226(c)" for due process purposes." *Rodriguez v. Robbins*, 804 F.3d 1060, 1070 (9th Cir. 2015), *rev'd on other grounds by Jennings v. Rodriguez*, 583 U.S. 281, (2018).

**IV.      Unreasonably Prolonged Detention May Violate The Constitution**

The Government argues that Mr. Machado has no constitutional right to a bond hearing before the end of his removal proceedings, no matter how long the removal proceedings may take. In their reading, the Supreme Court's opinion in *Demore* establishes that mandatory detention statutes are constitutional where they provide that detention will end at the end of removal proceedings; therefore, as long as someone is properly detained under one of these statutes, their detention is constitutionally permissible. The Government also makes a related argument that even if the Court does find that Mr. Machado's detention is unconstitutionally prolonged, a person who falls under one of the mandatory detention statutes is ineligible for bond, and therefore a bond hearing cannot be ordered unless the Court also finds that Mr. Machado is not subject to mandatory detention as a matter of statutory interpretation.

The Government's reading of *Demore* and the mandatory detention statutes is wrong on both fronts. In *Demore,* the Supreme Court considered a due process challenge to § 1226(c), which mandates detention during removal proceedings for noncitizens convicted of certain crimes. The Court explained that Congress drafted § 1226(c) to respond to the high rates of crime and flight by removable noncitizens and held that "the Government may constitutionally detain deportable [noncitizens] during the limited period necessary for their removal proceedings." 583 U.S. at 518-21, 526. In so holding, the Court stressed the "brief" nature of the mandatory detention under § 1226(c), which has "a definite termination point" that, in the majority of cases, resulted in detention of less than ninety days, and in the vast majority, less than about five months. *Id.* at 529-30. Justice Kennedy, who provided the fifth vote, concurred separately to state that a noncitizen could still be constitutionally entitled to "an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." *Id.* at 532. Following *Demore*, the Ninth Circuit has continued to express "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so." *Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018).

Considering this authority, district courts in the Ninth Circuit have been "extremely wary of permitting continued custody absent a bond hearing" after habeas petitioners have spent a long time in mandatory detention. *Arechiga v. Archambeault*, No. 223CV00600CDSVCF, 2023 WL 5207589, at *2 (D. Nev. Aug. 11, 2023) (collecting cases). The Court thus concludes that unreasonably prolonged detention without a bond hearing may violate due process.

**V.      Mr. Machado's Prolonged Detention Without A Bond Hearing Violates His Due Process Rights.**

District courts apply a variety of tests to assess prolonged detention claims, and the *Mathews* test is one of them. *Lopez v. Garland*, 631 F. Supp. 3d 870, 877 (E.D. Cal. 2022) (citing *Mathews v. Eldridge*, 424 U.S. 319 (1976)); *see, e.g., De Leon*, 2024 WL 343437, at *1; *Ortiz-Castillo*, 2024 WL 756075, at *1. While the Petitioner asks the Court to apply the *Mathews* test, the Government's briefing neither addressed *Mathews* nor offered an alternative test, and the Government argued at the hearing that *Mathews* does not apply. Courts routinely apply the *Mathews* test to assess the constitutionality of immigration detention procedures. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022) (observing that the Ninth Circuit and other circuits continue to apply the *Mathews* test notwithstanding the Government's heightened interest in detaining immigrants, and applying the *Mathews* test to determine whether a detainee was entitled to a second bond hearing.) Accordingly, this section will primarily analyze his constitutional entitlement to a bond hearing under *Mathews*, weighing (1) the private interest at stake, (2) the risk of an erroneous deprivation of that private interest and the value of additional safeguards, and (3) the Government's countervailing interests. *Mathews*, 424 U.S. at 334.

**A. The Private Interest**

Habeas petitioners have a clear private interest in their own liberty. "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *Hamdi*, 542 U.S. at 529; see also Zadvydas, 533 U.S. at 696.

When assessing the strength of that interest, length of detention is "the most important factor." *Singh v. Barr*, 400 F. Supp. 3d 1005, 1021 (S.D. Cal.

5

2019) (citing *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1118 (W.D. Wash. 2019)). Some district courts consider a year in detention to be the benchmark. *Id.* Others have released petitioners after as little as two months. *Perera v. Jennings*, No. 21-CV-04136-BLF, 2021 WL 2400981, at *2 (N.D. Cal. June 11, 2021); *see also Lopez*, 631 F. Supp. 3d at 879 (collecting cases); *Vargas v. Wolf*, No. 2:19-cv-02135-KJD-DJA, 2020 WL 1929842, at *7 (D. Nev. Apr. 21, 2020) (granting bond after 11 months of detention); *Lazaro v. Warden*, No. 1:26-cv-00060-DC-SCR, 2026 WL 1021063, at *3–4 (E.D. Cal. Apr. 15, 2026) (granting bond after 8 months).

The reason for the delay is also relevant to the significance of the petitioner's liberty interest. *Lopez*, 631 F. Supp. 3d at 877. A petitioner's liberty interest may be diminished when they prolonged their detention by taking advantage of their right to appeal, or where they received bond hearings in detention but were determined ineligible for release. *De Leon*, 2024 WL 343437, at *3; *Rodriguez Diaz*, 53 F.4th at 1208 ("[I]n evaluating Rodriguez Diaz's interests [in an additional bond hearing] under the first prong of the *Mathews* analysis, we cannot simply count his months of detention and leave it at that. We must also consider the process he received during this time, the further process that was available to him, and the fact that his detention was prolonged due to his decision to challenge his removal order.")

Mr. Machado's liberty interest is also implicated by the conditions under which he is confined. Federal courts consider evidence of harsh, inhumane, or unsanitary conditions under this first *Mathews* factor in immigration detention cases. *See, e.g., Van Dan v. Warden of Golden State Annex*, No. 1:26-cv-00629-DJC-SCR, 2026 WL 632523, at *4 (E.D. Cal. Mar. 6, 2026); *Lu v. Genalo*, -- F. Supp. 3d --, 2025 WL 3512244, at *5 (S.D.N.Y. Dec. 8, 2025); *see also Banda*, 385 F. Supp. 3d at 1106. Mr. Machado alleges that medical care in Nevada

Southern Detention Center is poor, and that he has been exposed to mold and human waste that he was obliged to clean himself without appropriate cleaning products. (ECF No. 9-13.) While not disputing those alleged conditions, the Government argues that a conditions of confinement claim is properly brought in a civil rights action. These conditions add to the stakes of depriving Petitioner of his liberty.

Mr. Machado has a highly significant interest in liberty. First, twelve months in detention is sufficiently long to establish a strong liberty interest. *See Singh*, 400 F. Supp. 3d at 1021; *see also Lopez*, 631 F. Supp. 3d at 879. Four of these twelve months were spent waiting for DHS to initiate removal proceedings against him. Second, Petitioner did not consent to prolonging his detention by filing an appeal of the IJ's decision granting him voluntary departure. DHS was the appealing party. *See Rodriguez Diaz,* 53 F.4th at 1208. Petitioner has also provided evidence that his liberty interest is heightened because the alternative — keeping him in detention — would mean subjecting him to conditions that are unhygienic and inhumane. (ECF No. 9-13.)

**B. The Value of Additional Safeguards**

Courts evaluating the utility of a bond hearing inquire whether or not there is a realistic possibility that it could vindicate the petitioner's interests, i.e., whether there is a chance that an IJ would grant release on bond based on the petitioner's apparent dangerousness and flight risk. *See, e.g. De Leon*, 2024 WL 343437, at *3 (denying release where felony drug conviction and other criminal history would likely lead an IJ to deny bond); *Ortiz-Castillo*, 2024 WL 756075, at *3 (granting a bond hearing in a case where "the Court [could] not assume that an IJ would deny" it, despite the petitioner's prior arrest for extortion). At a bond hearing, the Government would bear the burden to prove that the petitioner is dangerous or a flight risk by clear and convincing evidence. *Martinez v. Clark*,

124 F.4th 775, 785 (9th Cir. 2024) ("[T]he BIA properly noted that the government bore the burden to establish by clear and convincing evidence that [a detained noncitizen] is a danger to the community" in the context of prolonged detention under 8 U.S.C. § 1226(c)).

Generally speaking, "[a]s the period of confinement grows, so do the required procedural protections no matter what level of due process may have been sufficient at the moment of initial detention." *Hong v. Mayorkas*, No. 20-cv-01784-LK, 2022 WL 1078627, at *5 (W.D. Wash. Apr. 11, 2022) (alteration and internal quotation marks omitted). Because the past and anticipated future deprivation of his liberty interest is serious, Mr. Machado is appropriately entitled to a non-futile process so that he may obtain a reasoned determination on whether it is justified. An initial bond hearing at which the petitioner and the government can both present evidence and argue the bond factors is likely to increase the accuracy of the process. *Rodriguez Cabrera v. Mattos*, 808 F. Supp. 3d 1159, 1181 (D. Nev. 2025); *Gaitan Coreas v. Mullin*, No. 2:26-CV-00591-GMN-DJA, 2026 WL 1121974, at *7 (D. Nev. Apr. 24, 2026); *E.C. v. Noem*, No. 2:25-cv-01789-RFB-BNW, 2025 WL 2916264, at *11 (D. Nev. Oct. 14, 2025). Mr. Machado will have an opportunity to argue for release under the governing bond standard. The Government is not guaranteed to carry its burden just because he has prior convictions for nonviolent offenses, or that he is a flight risk. *Singh v. Holder*, 638 F.3d 1196, 1205 (9th Cir. 2011) ("Although [a final removal order] is a relevant factor in the [flight risk] calculus, it alone does not constitute clear and convincing evidence that Singh presented a flight risk justifying denial of bond.") (overruled on other grounds); *Tavurov v. Noem*, No. 2:26-CV-00668-TLF, 2026 WL 1283513, at *7 (W.D. Wash. May 11, 2026).

8

**C. Government Interest**

For the purpose of a *Mathews* analysis, courts evaluate the government's interest in detaining the petitioner without his requested procedures, not the government's interest in immigration detention *per se. Rodriguez Cabrera*, 808 F. Supp. 3d at 1182; *see Gaitan Coreas,* 2026 WL 1121974, at *7 ("[T]he government's interest in detaining Petitioner without a hearing is low"). The Government has a strong interest in the efficient administration of immigration laws, including those regarding detention of noncitizens. *Rodriguez Diaz*, 53 F.4th at 1208. However, the Government's interests in detention will still be adequately protected if immigrants are afforded some minimal procedural guarantees. Furthermore, it is not costly or difficult for the Government to provide noncitizens with a bond hearing. *See Gaitan Coreas*, 2026 WL 1121974, at *7 ("[C]ustody hearings are routine and impose a 'minimal' cost.")

**VI.    Conclusion**

IT IS THEREFORE ORDERED that Petitioner Abel Machado Morales' petition for habeas corpus under 28 U.S.C. § 2241 (ECF No. 9) is GRANTED.

IT IS FURTHER ORDERED that within 7 days of the date of this order, Respondents shall provide Petitioner with an individualized bond hearing before an immigration judge, at which the Government will bear the burden of proving by clear and convincing evidence that he is not eligible for bond. If a bond hearing is not provided within 7 days of this order, Respondents will release Petitioner.

IT IS FURTHER ORDERED that the parties will file a status report indicating whether Petitioner has received a bond hearing or been released within 10 days of this order.

DATED: June 5, 2026

ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE

9